UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILMER ALEXANDER IRAHETA VIGIL,<br><br>       Petitioner,<br><br>    v.<br><br>CHRISTOPHER CHESTNUT, WARDEN, CALIFORNIA CORRECTIONAL FACILITY, *et al*.,<br><br>       Respondents. | Case No.  1:26-cv-03967-VC<br><br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 1 |

Petitioner Wilmer Alexander Iraheta Vigil was arrested by U.S. Immigration and Customs Enforcement ("ICE"), a division of the Department of Homeland Security ("DHS"), on October 30, 2025. He filed this petition for a writ of habeas corpus arguing that his continued detention without a finding of changed circumstances following his previous release from DHS custody on December 31, 2022, violates his substantive and procedural due process rights, and the Trafficking Victims Protection Reauthorization Act ("TVPRA"). *See* Dkt. 1 ¶¶ 96–111. For the reasons that follow, the Court GRANTS the petition.

## I.     BACKGROUND

Petitioner entered the United States as a sixteen-year-old unaccompanied minor sometime in 2022. *Id*. ¶ 2. He was taken into DHS custody shortly thereafter. *Id*. Immigration authorities then designated Petitioner as an unaccompanied minor and transferred him to U.S. Department of Health and Human Services, Office of Refugee Resettlement ("ORR") custody. *Id*. ¶ 23. ORR released Petitioner to the custody of an adult sponsor shortly thereafter. *Id*. Despite his release in

2022, DHS did not initiate removal proceedings until September 2025. *Id*. ¶ 28.

Following his release, Petitioner established a life in United States. He began attending high school and became an active member in his local church. *Id*. ¶ 27.  Petitioner also applied for Special Immigrant Juvenile Status—which still remains pending with USCIS—and applied for asylum. *Id*. ¶¶ 26–26. The application for asylum was denied by and immigration judge ("IJ") in March 2026, but Petitioner has appealed this decision to the Board of Immigration Appeals. *Id*. ¶ 26.

In October 2025, ICE requested that Petitioner report to the DHS office for a routine check-in. *Id*. ¶ 29. Upon his arrival, Petitioner was detained. *Id*. ¶ 30. He is currently being held at the California City Correctional Facility and has not been afforded a substantive bond hearing to challenge his continued detention. *Id*. ¶¶ 31–32.

## II.    DISCUSSION

Petitioner asserts three claims for relief, including that his detention violates his substantive and procedural due process rights and the TVPRA. Because Petitioner's procedural Due Process Clause claim (count 2) affords Petitioner all the relief to which he is entitled—namely, release and a pre-deprivation hearing prior to re-detention—the Court need not and does not reach Petitioner's remaining claim.

As to his due process claim, Petitioner argues that, because civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community, *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023), the Due Process Clause bars the government from re-detaining him without first providing a hearing where it must make that showing. *See* Dkt. 1 ¶¶ 91–92. Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

2

### A.      Protected Liberty Interest

The Trafficking Victims Protection and Reauthorization Act ("TVPRA") that governs the detention of unaccompanied minors encountered at the border, like Petitioner, provides that in making custody determinations ORR should consider "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). ORR's release of Petitioner then reflects a determination that he was not a flight risk or danger to the community when he was released to the custody of a sponsor in December 2023. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176, 1178 (N.D. Cal. 2017) ("[Immigration officials] may release the minor to a "sponsor" … so long as the minor is not dangerous …. Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.") (citing 8 U.S.C. § 1232(c)(2)(A)), *aff'd* 905 F.3d 1137 (9th Cir. 2018)).

Numerous courts have found that where an unaccompanied minor is released by the ORR to a sponsor, he obtains a liberty interest in his continued freedom, even after reaching adulthood. *See, e.g.*, *Sergio S.M. v. Noem*, No. 1:25-CV-01973-KES-HBK (HC), 2025 WL 3768206, at *3 (E.D. Cal. Dec. 31, 2025); *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2686866, *4–5 (E.D. Cal. Sept. 18, 2025); *F.S.S.M. v. Wofford*, No. 1:25-CV-01518-TLN-AC, 2025 WL 3526671, at *3 (E.D. Cal. Dec. 9, 2025); *P.A.H.E. v. Noem*, No. 1:26-CV-01164-DJC-JDP, 2026 WL 451662, at *2 (E.D. Cal. Feb. 17, 2026). Immigration officials' release of Petitioner nearly three years ago allowed him to start high school and become a contributing member of his church. *Id*. ¶ 27. Under these circumstances, the Court finds that Petitioner has a protected liberty interest in his release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

Respondents argue the government has not violated Petitioner's due process rights

because he is an applicant for admission subject to mandatory detention under § 1225(b)(2), and that "'the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings.'" Dkt. 7 at 4–5 (quoting *Demore v. Kim*, 538 U.S. 510, 526 (2003)). This argument, however, misconstrues the allegations in the Petition. Petitioner has not argued that § 1225(b)(2) is facially unconstitutional or unconstitutional as applied to him. Rather, he claims that § 1225(b)(2) "does not apply to noncitizens who entered the United States as unaccompanied children subject to 8 U.S.C. § 1232 [i.e., the TVPRA]," like himself. Dkt. 1 ¶ 110. Respondents have not addressed this argument.

The Court agrees with the multitude of courts to have address this question, and finds Petitioner is not subject to mandatory detention under § 1225(b)(2). *See, e.g.*, *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485–86 (S.D.N.Y. 2025) (holding § 1225(b)(2)'s mandatory detention provision does not apply to a petitioner designated as an unaccompanied minor under the TVPRA); *Sandoval v. Rokosky*, No. CV 25-17229 (SDW), 2025 WL 3204746, at *2 (D.N.J. Nov. 17, 2025) (same); *R.D.T.M.*, 2025 WL 2686866, at *4; *Singh v. Stevens*, 821 F. Supp. 3d 898, 908–09 (N.D. Ohio 2026) ("Petitioner was initially detained and released by ORR consistent with the TVPRA. Accordingly, he remains protected under § 1232(c)(2)(B) of the TVPRA and is not an "applicant for admission" subject to mandatory detention under § 1225(b)(2)"). Petitioner entered the United States when he was sixteen and was classified as an unaccompanied child under the custody of ORR (Dkt. 1 ¶ 23), and then was released into the United States by ORR pursuant to the TVPRA (*id.*). If Petitioner was in fact an applicant for admission under § 1225(b)(2), his release could only have been pursuant to the limited exception for release under that statute provided by 8 U.S.C. § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) ("That express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released."). "Petitioner's classification as an unaccompanied minor and subsequent release under the TVPRA thus indicates he is not an applicant for admission confined to the conditions [] [the § 1225(b)(2)] classification carries." *F.S.S.M*, 2025 WL 3526671, at *4; *see also Salvador v. Bondi*, No. 2:25-

CV-07946-MRA-MAA, 2025 WL 2995055, at *7 (C.D. Cal. Sept. 2, 2025) ("[W]hen Petitioner crossed the border and was apprehended, the government did not classify him as an applicant for admission subject to expedited removal. That Petitioner should now—approximately four years after entering the country and being released by ORR—be treated as an 'applicant for admission' defies logic.").

For these reasons, Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2). He therefore has a liberty interest in his release from immigration detention protected by the Due Process Clause.

### B.     Due Process

As Petitioner has a protected liberty interest in his continued freedom, the Court must next determine what process is due before the government may terminate his liberty. Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for nearly four years. Since then, he has obtained work authorization, attended school, and been granted various immigration related protections by immigration authorities. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the Petitioner] has not received any bond or custody redetermination

hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. The record before the Court indicates that Petitioner has complied with all terms of his release, and in fact was attempting to comply with directives from DHS when he was arrested. Dkt. 1 ¶¶ 29–30. Respondents have not argued that there has been any change in circumstances indicating Petitioner is a danger to the community. Thus, the risk of erroneous deprivation is considerable. *F.S.S.M.*, 2025 WL 3526671, at *6 (finding risk of erroneous deprivation considerable where "as here, Petitioner was previously released pursuant to a finding that he was neither dangerous nor a flight risk" under the TVPRA).

In arguing that § 1225(b)(2) is constitutional as-applied to Petitioner, Respondents note that Petitioner has received a bond hearing before an IJ. The IJ, however, did not make a finding that Petitioner was dangerous or a flight risk, justifying his continued detention. Rather, it held that "this Court has no authority to hear bond requests or to grant bond to aliens who are present in the United States without admission"—in other words, it agreed with Respondents' contention that Petitioner may be mandatorily detained under § 1225(b)(2). Dkt. 6-1 at 1. As there have been no substantive procedural safeguards to determine if Petitioner's re-detention is justified on a finding of flight risk or danger to the community, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F. Supp. 3d1094. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

### C.    Remedy

The Court finds that the appropriate remedy here is immediate release, rather than a substantive bond hearing before an IJ. Respondents acknowledge that "[i]f the Court determines that § 1225(b) does not apply, then [Petitioner's] detention is governed by 8 U.S.C. § 1226(a)[,]" which allows for a bond hearing. Dkt. 6 at 1. However, "a pre-deprivation hearing, provided *before* the Petitioner is detained, is necessary to protect Petitioner's liberty interest." *Cornejo v. Andrews*, No. 1:25-CV-02062 JLT HBK, 2026 WL 237748, at *9 (E.D. Cal. Jan. 29, 2026) (emphasis added); *R.D.T.M.*, 2025 WL 2686866, at *6 ("The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.") (citations and quotations omitted). Aside from the fact that Respondents have made no argument explaining why 8 U.S.C. § 1226(a) is the appropriate statutory framework to detain Petitioner under, "[p]ost-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process." *Singh v. Janecka*, No. 5:26-CV-01466-AYP, 2026 WL 1334832, at *4 (C.D. Cal. May 8, 2026). As such, immediate release is warranted.

### III.    CONCLUSION AND ORDER

Accordingly, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1.    Respondents immediately release Petitioner Wilmer Alexander Iraheta Vigil from their custody.

2.    Respondents shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation and/or custody hearing.

3.    If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter, at which Petitioner's eligibility for bond must be considered. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

4.      The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: June 18, 2026

_____

VINCE CHHABRIA
United States District Judge